

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

AB/ML:AXB

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

July 25, 2019

<u>By ECF and E-Mail</u>

The Honorable Peggy Kuo
United States Magistrate Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

   Re: United States v. Thomas McQueen
     <u>Magistrate Docket No. 19-MJ-657</u>

Dear Judge Kuo:

  The government respectfully submits this letter in connection with the detention hearing scheduled today in the above-captioned matter. For the reasons set forth below, the government submits that the defendant Thomas McQueen, also known as "Josh Toller," has not overcome the presumption that there is no condition or combination of conditions that can reasonably assure his appearance as required and the safety of the community. Therefore, the Court should deny the defendant's request for bail and enter a permanent order of detention pending trial.

  I. <u>Procedural and Factual Background</u>

  The defendant is charged with distributing child pornography, in violation of Title 18, United States Code, Section 2252(a)(2). As set forth in the sworn complaint, this case stems from an investigation conducted by the Federal Bureau of Investigation ("FBI") into the online activities of the defendant and others involved in trafficking in child pornography.[1]

---

[1] As noted during the bail proceedings held on July 24, 2019, although the defendant is currently charged with distribution of child pornography, the evidence outlined in the complaint also supports additional potential charges, including, but not limited to, producing, receiving and possessing child pornography.

The defendant was arrested on July 24, 2019, when FBI agents executing a judicially-authorized search warrant on his premises discovered hundreds of videos and images of child pornography.  The defendant was revealed to have used the alias "Josh Toller" to traffic in child pornography online.[2]  Some of the material recovered during the execution of the warrant involved toddlers engaged in lewd and explicit activities, including bondage of young children and sadomasochistic themes.  The defendant made voluntary statements to the agents concerning this material, including admissions that he had surreptitiously recorded certain of the videos himself using the Periscope cellphone app.  The defendant also confirmed to the agents that he works at an elementary school.  Moreover, when agents arrived at the premises, they encountered approximately eight people apparently living with the defendant, including a 10-year old boy and an 11-year old girl.

Following his arrest, the defendant was interviewed by officers with the Pretrial Services Department ("Pretrial").  When asked to describe his living situation, the defendant told the officers that he lived with his common-law wife, Tavia George, and her two adult children.  He identified Ms. George and a neighbor as potential sureties to co-sign a bond.  Pretrial then interviewed Ms. George, who failed to dispute or clarify the information provided by the defendant regarding his living situation.  Ms. George also repeatedly advised the officers that she owned a private residence in Queens that could be offered as collateral to secure any potential bond.  Based largely on this information, Pretrial recommended that the defendant be released pending trial to his residence on a bond signed by Ms. George and secured by her Queens property.[3]

During the course of the proceedings on July 24, 2019, it quickly became apparent that many of the facts underpinning Pretrial's recommendation were false.  Most importantly, both the defendant and Ms. George omitted the fact that Ms. George's 10-year old grandson also lived at the defendant's residence and would continue living there after the defendant's release.  When confronted with this information, the defendant had no explanation for withholding that fact from Pretrial and, through counsel, simply advised the Court that Ms. George and the boy's mother were unconcerned about the current living situation.  It was stated that Ms. George and the boy's mother would endeavor to prevent the

---

[2] As set forth in the Complaint, the defendant created an e-mail address, Venmo account and Kik Messaging account in the name of "Josh Toller" to purchase and trade child pornography online, as well as to engage in communications with other individuals about child pornography.  In this regard, the defendant was first identified by law enforcement operating in an online chat room entitled "CP," which catered to individuals specifically interested in child pornography.

[3] Pretrial did not find – and the defense has not suggested – that Ms. George is a financially-responsible surety for purposes of co-signing a bond.  Therefore, Pretrial did not recommend that a bond secured solely by the signature of Ms. George would be sufficient to ensure the defendant's appearance in Court.

defendant from being alone with the boy after his release.[4] It was also revealed that, contrary to her statements to Pretrial, Ms. George did not own a private residence in Queens, or any other property that could be used to secure a potential bond for the defendant. Again, when confronted with this information, the defendant had no explanation for his wife's misrepresentation to Pretrial. Finally, it was revealed that an adult individual identified only as "Anthony" also sometimes lived at the defendant's residence. When confronted with this information, the defendant offered no explanation for failing to identify him as a cohabitant and was otherwise unable to provide the Court information about this person other than that he "comes and goes" from the residence.

The July 24, 2019 proceedings concluded with the Court noting that, as more information became available, the Court was less comfortable, rather than more comfortable, with the idea of releasing the defendant. A temporary order of detention was entered until today, July 25, 2019. In the meantime, Pretrial was directed to conduct a home visit to determine the suitability of the defendant's apartment for pretrial release.

II. The Court Should Deny the Defendant's Bail Application

Based on the circumstances as they are now known to exist, the government does not believe that there is any condition or combination of conditions that can reasonably assure the appearance of the defendant as required and the safety of the community. Even if such conditions did exist, the bail package currently offered by the defendant is insufficient to overcome the presumption favoring detention here.

A. Legal Standard

The Bail Reform Act of 1984, codified at 18 U.S.C. §§ 3141-3156, "requires that an accused be detained pending trial where, following a hearing in accordance with § 3142(f), 'the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community.'" United States v. English, 629 F.3d 311, 318 (2d Cir. 2011) (quoting 18 U.S.C. § 3142(e)(1)). Here, the defendant is charged with distributing child pornography, which carries a statutory presumption under 18 U.S.C. § 3142(e)(3) that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community." See 18 U.S.C. § 3142(e)(3)(E) (presumption for offenses involving minor victims under 18 U.S.C. §§ 2251 and 2252).

To rebut this statutory presumption, the burden is on the defendant to come "forward with evidence that he does not pose a danger to the community or a risk of flight." United States v. Mercedes, 254 F.3d 433, 436 (2d Cir. 2001) (per curiam). If this limited burden of production is satisfied, the government retains the burden of persuasion by clear

---

[4] This assurance was given notwithstanding Pretrial's uncontested recommendation that the defendant remain on full-time home detention at the shared residence pending trial.

3

and convincing evidence that the defendant presents a danger to the community and by a preponderance of evidence that the defendant presents a risk of flight. See id.

To determine whether the presumptions of dangerousness and flight are rebutted by a defendant, the Court must consider: (1) the nature and circumstances of the crime charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant, including family ties, employment, financial resources, community ties, drug or alcohol abuse history and past conduct; and (4) the nature and seriousness of the danger to the community or to an individual that would be posed by release. 18 U.S.C. § 3142(g).[5] If the defendant meets his burden of production relating to danger to the community and risk of flight, the presumption in favor of detention does not disappear entirely but remains a factor for the court to consider. See Mercedes, 254 F.3d at 436.

  B. Analysis

    1. The Defendant Is a Flight Risk

Initially, it warrants noting that the offense with which the defendant is charged, distributing child pornography, carries a statutory mandatory minimum of five years' imprisonment and a statutory maximum of 20 years. See 18 U.S.C. § 2252(a)(2), (b)(1). The Second Circuit has held that the possibility of a severe sentence is an important factor in assessing flight risk. See United States v. Jackson, 823 F.2d 4, 7 (2d Cir. 1987); United States v. Cisneros, 328 F.3d 610, 618 (10th Cir. 2003) (defendant was a flight risk because her knowledge of the seriousness of the charges against her gave her a strong incentive to abscond); United States v. Townsend, 897 F.2d 989, 995 (9th Cir. 1990) ("Facing the much graver penalties possible under the present indictment, the defendants have an even greater incentive to consider flight.").

Moreover, the defendant is known to have created and utilized a fake identity to perpetrate his crimes. In this regard, as set forth in the Complaint, the defendant created online payment and communication accounts in the name of a fictitious individual called "Josh Toller" for the purpose of trafficking in child pornography. Indeed, so elaborate were the defendant's efforts that law enforcement was required to execute multiple subpoenas simply to sift through the layers of false information concealing the defendant's true identity. See, e.g., United States v. Jackson, 823 F.2d 4, 6 (2d Cir. 1987) (affirming detention on flight risk grounds where the underlying charge carried a presumption of detention and the defendant used a number of aliases and had shown skill in avoiding surveillance). While the government appreciates the representation by defense counsel on July 24, 2019 that the

---

[5] In evaluating dangerousness, courts consider not only the effect of a defendant's release on the safety of identifiable individuals, such as victims and witnesses, but also "'the danger that the defendant might engage in criminal activity to the detriment of the community.'" United States v. Millan, 4 F.3d 1038, 1048 (2d Cir. 1993) (quoting legislative history).

4

defendant does not possess a passport and otherwise has limited means to flee, the Court should not adopt such a narrow construction of the term "flight." Rather, notwithstanding his ability to flee abroad, it is significant that the choice now facing this defendant is answering the instant charge as required and, potentially, serving a mandatory minimum sentence, or disappearing into the community under an assumed name and identity. The government submits that, based on the defendant's demonstrated willingness to create an elaborate false identity to avoid detection by law enforcement, the evidence supports a finding of a risk of flight.

Finally, and as discussed in more detail below, the lack of candor shown by the defendant and his family members during their interviews with Pretrial engenders little confidence that the defendant will abide by the putative conditions of release. If the defendant and his common-law wife cannot be relied upon to provide truthful and accurate responses to easily-verifiable questions about their assets and living conditions, the Court cannot rely on their assurances that they will endeavor – through moral suasion or otherwise – to ensure the defendant's appearance as required.

### 2. The Defendant Poses a Danger to the Community

Furthermore, considerations of dangerousness weigh against the pretrial release of the defendant in this case. The offense of distributing child pornography is always an extremely serious one, hence its characterization as a "crime of violence" under the Bail Reform Act. See 18 U.S.C. § 3156(4)(C); see also United States v. Reiner, 468 F. Supp. 2d 393, 397 (E.D.N.Y 2006) (finding the rationale for this classification "clear" based on Congressional findings concerning "the harm caused by a pedophile, be he a distributor or mere consumer in child pornography" – in all cases, "the mere existence of and traffic in child pornographic images creates the potential for many types of harm in the community and presents a clear and present danger to all children.") (internal citation omitted).

Especially where, as here, the pornographic material in the defendant's possession was particularly graphic; the defendant admitted that he had recorded certain of the materials himself; and the defendant was operating within known child pornography forums under an assumed name, the criminal conduct presents an acute danger to the community. See id. at 396-99. In Reiner, Judge Bianco found by clear and convincing evidence that the defendant, who was charged with possession of child pornography, posed a unique danger to the community – not only because of the risk that he would personally abuse children, but also the risk that he might attempt to view or communicate with others who possess, sell and distribute child pornography while on bail:

> Based upon the nature of the charges in the indictment regarding the possession of child pornography and all of the evidence that has been proffered by the Government – including the evidence of his possession of hundreds of images and dozens of videos of children engaged in sexually explicit conduct, including images of sadistic abuse of children, . . . – the Court finds that the Government has presented by clear and convincing evidence that the defendant is a danger

5

>to children and the community generally. The Court emphasizes that, based upon the charges and related evidence proffered by the government, the issue is not only defendant's potential abuse of children and his interaction with children if on bail, but also his ability, if he is released on bail, to attempt to possess additional child pornography, or to communicate or interact with (via email, internet, or phone) others involved in the possession, sale, and distribution of child pornography or other sexual abuses of children, which would also create a clear danger by facilitating the criminal and dangerous exploitation of children by other individuals.

Id. at 397 (emphasis added).

In this case, the concerns outlined in Reiner are amplified by several factors. First, up until the point of his arrest, the defendant was employed at an elementary school and requested that the Court permit him to continue doing so for an additional pay period while on bail. Second, the defendant has been, and, again, requests that he be allowed to continue, sharing a residence with a 10-year old child. These facts compel the conclusion that either the defendant is not fully grasping the seriousness of his situation or that he is unwilling to extract himself from environments where children are present – either makes him a danger to the community.

Third, in an effort to secure the defendant's release, he and his proposed surety lied to Pretrial about critically relevant information. Given the nature of the charges in this case, it is extremely worrisome that, when asked about his living situation, the defendant omitted the existence of a 10-year old boy in his home. It is all the more worrisome that his wife omitted the same information, and that neither of them addressed the numerous other individuals in their home at approximately 6:00 a.m. on July 24, 2019, when the FBI arrived with a warrant, including an 11-year old girl. Moreover, as noted above, Ms. George lied to Pretrial about her ability to post collateral to secure a recognizance bond for the defendant. These falsehoods were material to Pretrial's investigation and informed Pretrial's recommendation that supervised release was appropriate. Under the circumstances, the government lacks confidence that the defendant and his sureties can be relied upon to abide by any supervisory conditions that are aimed at protecting minors in the home and elsewhere. Specifically, during the July 24, 2019 proceedings, it was represented by defense counsel that Ms. George and her adult daughter would ensure that the defendant – who, if released, will be on full-time home detention – does not find himself alone with the boy. But again, if those same individuals cannot be relied upon to provide truthful and accurate responses to

easily-verifiable questions about their assets and living conditions, the Court cannot take them at their word with regard to the safety and security of a child.

Moreover, as discussed above, the defendant can pose a harm to the community even without live interaction with children. As discussed above, the defendant was involved in actually recording and distributing child pornography, which he was able to do using a cellphone app, and could, conceivably, continue to do with access to a computer or other internet-capable device. For all of the reasons set forth above, the proposed bail package does not mitigate the potential danger that the defendant poses, particularly where he and his sureties fail to take the instant charges and alleged conduct seriously.

### III. Conclusion

For the foregoing reasons, the government respectfully requests that the Court deny the defendant's request for bail and enter a permanent order of detention.

Respectfully submitted,

RICHARD P. DONOGHUE
United States Attorney

By: /s/
Anthony Bagnuola
Assistant U.S. Attorney
(718) 254-6232

cc: Clerk of Court (by ECF)
Douglas G. Morris, Esq. (by email)